(C.D. 2777)

J. J. BOLL ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 3, 1966)

*Sharretts, Paley & Carter* (*M. Barry Levy* of counsel) for the plaintiffs.

*J. William Doolittle*, Acting Assistant Attorney General (*Sheila N. Ziff* and *Harvey A. Isaacs*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: The court is called upon to determine the classification for customs duty purposes of numerous importations of Klystron and photomultiplier tubes imported from England covered by the above-enumerated protest and 62 others listed in schedule A, attached to and forming part of this decision.

The Klystron and photomultiplier tubes were classified by the collector of customs as laboratory apparatus or parts thereof within the provisions of paragraph 360 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and duty was imposed thereon at the rate of 27 per centum or 25½ per centum ad valorem, according to the date of entry for consumption.

The contention of plaintiffs is that both types of tubes are properly subject to classification as articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy within the purview of paragraph 353 of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, for which duty at the rate of 15 per centum ad valorem is provided.

When the case was called for hearing, plaintiffs offered in their behalf the rather extensive testimony of four witnesses. A continuance of the trial was thereupon requested and granted for the presentation of additional testimony. On the appointed day, no new oral testimony was presented, but the parties entered into a stipulation with regard to the Klystron tubes covered by the instant protests, which stipulation was received in evidence as plaintiffs' exhibit 6, and is set forth in full below:

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the parties hereto that the merchandise represented

by the item numbers appearing on Plaintiffs' Exhibit 3 and on each of the invoices included in the entries, the subject of the protests enumerated in Schedule "A" attached hereto and made a part hereof, consist of klystrons which were classified either as laboratory apparatus or parts of laboratory apparatus under the provision of Paragraph 360, as modified by T.D. 52739, T.D. 52820, and T.D. 54108, and assessed with duty at 25½ or 27 per centum ad valorem;

IT IS FURTHER STIPULATED AND AGREED that the merchandise covered by this stipulation consists of articles which in themselves control, modify, distribute, produce or rectify electrical energy; that said articles are in chief value of metal, and that said articles were imported after the effective date of T.D. 51802 which modified the applicable rate contained in Paragraph 353 of the Tariff Act of 1930 to 15 per centum ad valorem;

IT IS FURTHER STIPULATED AND AGREED that said articles did not belong to a class or kind of articles which at the times of the importations involved was chiefly used in laboratories either alone or as part of any scientific or laboratory instrument, apparatus, utensil or applicance, or for experimentation or study.

In view of the foregoing stipulation of the parties, it is apparent that the defendant concedes error on the the part of the collector of customs in classifying the Klystron tubes as laboratory instruments or parts thereof in paragraph 360 of the Tariff Act of 1930, as modified by the sixth protocol, *supra*, and the assessment of duty thereon at the appropriate rates, and the validity of the plaintiffs' claim for classification of said Klystron tubes as articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy in paragraph 353 of said act, as modified by the General Agreement on Tariffs and Trade, *supra*, which provides duty thereon at the rate of 15 per centum ad valorem. Judgment will, therefore, be entered sustaining said claim of plaintiffs insofar as it relates to the Klystron tubes covered by the protests before the court.

There remains for the court's determination the proper classification and dutiable status of the photomultiplier tubes in issue which are specifically identified by the invoice item numbers appearing in a list received in evidence as plaintiffs' exhibit 1.

During the course of the testimony of plaintiffs' four witnesses above referred to, the parties orally agreed "that all the photomultipliers before the court produce, amplify, and modify electrical energy and perform no other function whatsoever." But the Government holds to its position that the photomultiplier tubes are, nevertheless, more specifically provided for as classified by the collector of customs as laboratory instruments or parts thereof in paragraph 360 of the tariff act, as modified.

It is basic that to the plaintiffs falls the burden of proof. By the collector's classification of the photomultiplier tubes as laboratory instruments or parts thereof, it follows that it was his decision that said

tubes meet the requirements judicially set forth for laboratory instruments and parts. It has been held in the case of *R. J. Saunders & Co., Inc.* v. *United States*, 45 CCPA 87, C.A.D. 678, that the term "laboratory instruments" implies use of said instruments for "laboratory purposes." And, in the case of *The A. W. Fenton Co., Inc.* v. *United States*, 49 Cust. Ct. 242, Abstract 67085, this court indicated that "laboratory purposes" referred to use for experiment or study.

For the plaintiffs to succeed herein, it is necessary for them to sustain the twofold burden of overcoming the presumption of correctness attaching to the collector's classification and of presenting satisfactory evidence to support their opposing claim. *Bob Stone Cordage Co. et al.* v. *United States*, 51 CCPA 60, C.A.D. 838. And inherent in the collector's classification is the presumption that he has found every fact necessary to support his classification. *F. H. Kaysing* v. *United States*, 49 CCPA 69, C.A.D. 798; *United States* v. *John A. Steer Co.*, 46 CCPA 132, C.A.D. 715. As applied to the present controversy, said presumption is that the collector of customs found that the photomultiplier tubes presently before the court were used for laboratory purposes of experiment or study.

Our first consideration, therefore, is, has said presumption been overcome? While, as stated above, plaintiffs have presented the rather extensive testimony of four witnesses, in the opinion of the court, said testimony falls short of the proof required. In the first place, the experience of two of plaintiffs' witnesses did not relate back to the time of the early importations of the photomultiplier tubes at bar. The entry papers before the court disclose that the importations covered a period from March 11, 1958, to March 24, 1961. Two of plaintiffs' witnesses had no familiarity with photomultiplier tubes or their uses prior to 1960. Moreover, the testimony is in vague and general terms rather than in language clear and specific as to the nature and function of the uses to which the photomultiplier tubes were put in order to negate the presumption of the collector's classification that, in their use, said tubes were used for laboratory purposes of experiment and study. As typical of the generality of the testimony, we quote the following excerpt from the record:

If we consider the tube type 9524 which is listed as 9524, 9524A, 9524B, and 9524S, I have seen this equipment in use in oil well lugging equipment; I have seen it installed in oil well lugging equipment and checked out for use. When the tube is in operation, it is 10,000 feet down in the hole and you cannot see it in use. The same tube is also used and I have seen it in use—I am sorry—the oil well lugging application is in the class of scintillation counting in which the tube is being used as part of a nuclear radiation detector. In another application which I have seen in the United States, I have seen the tube used in a photometer, which is being used to measure very low light levels in terms of standard photometric units. I have also seen this tube

used in nuclear health physics instruments which are being used to protect personnel in factories and in hospitals where they may become contaminated by nuclear radiation. If we consider the tube type 9529, I have seen this tube being used in a spectrophotometer manufactured by Perkinelmer of Norwalk, Connecticut, and I have seen the 9536 class of tube there are several subtypes listed with subscripts used in equipment at Nuclear, Chicago, * * *. I have seen 9549 used in the Argonne National Laboratory. I have seen the 9558 used in spectrophotometers by two or three companies in this country, by Beckman Instruments, by McPherson, and by Clyde Research. A photomultiplier tube is used to receive the light emerging from a prism or a grating which splits up the light from a source which may be a tungsten lamp into a range of wave lengths. * * *

In the presentation of the case to the court, it is apparent that stress was placed on a showing of the diversity of uses to which photomultiplier tubes were put. The brief of plaintiffs at page 12 contains the following listing of "multiplicity of function" reflected by the testimonial record:

liquid scintillation
spectrophotometers
flying spot scanners
smoke detectors
astronomical light detectors
photometers
seed sorters
oil well exploration equipment
monitors of waste products which may be injurious to health
hospital analyzation of tracer materials
Volumetron-Hospital measurement of blood volume
qualitative analysis in steel mills
nuclear radiation detection
health physics instruments
material absorption measurement
gamma ray scintillation
hand and clothing monitor
cosmic ray research equipment
industrial colorimeter
oil cleanliness detector
detector of chips and cracks in baby food jars and other glassware
television film scanning
color measurement for textile quality control
flight simulators for military aircraft training
low beta and low gamma measurement
toxic gas measurement and detection
quality measurement of fruit

It is the position of plaintiffs herein that, inasmuch as the photomultipliers before the court are not dedicated to use as integral parts of a particular instrument or a particular class of instruments, they can not be considered as parts of laboratory instruments for tariff purposes. Plaintiffs place great reliance on the recent cases of *United*

*States* v. *Ford Motor Company,* 51 CCPA 22, C.A.D. 831, and *Gallagher & Ascher Company* v. *United States,* 52 CCPA 11, C.A.D. 849, and cases cited therein, in an attempt to support its argument that "the 'dedication' test governs the classification of the instant merchandise."

In the *Ford Motor* case, *supra,* it was held that certain parts for internal-combustion engines, which were shown to be essential parts of such engines, were properly subject to classification as parts of internal-combustion engines rather than as parts of automobiles for the reason that the engines of which they formed parts were not dedicated for use in the automotive field.

In the *Gallagher & Ascher* case, *supra,* auxiliary automobile heaters were held to be parts of automobiles for tariff purposes upon a showing that said heaters were solely dedicated for use and, in the performance of the function for which they were designed, served no other purpose than as parts of automobiles.

In view of the testimonial record before the court in the instant case, as it applies to the photomultiplier tubes in issue, we do not consider the cases relied upon by plaintiffs to be controlling of the claimed classification.

The fact that the testimony here presented indicates that photomultiplier tubes are not limited exclusively to use in any particular class or kind of device does not obviate the fact that said tubes may, in their diverse uses, be used for laboratory purposes and consequently be subject to classification as laboratory apparatus or parts thereof. The classification of the collector of customs carries with it this presumption, which it is the duty of the party contesting it to overcome. The fact that the instant tubes may be used as parts of a variety of apparatus, instruments, and devices does not *ipso facto* preclude the fact that said apparatus, instruments, or parts thereof may be laboratory instruments or parts thereof, as determined by the collector of customs if said articles are used for laboratory purposes of experiment or study regardless of the situs of such use.

After due consideration of the record presented and the various cases cited by the parties in their briefs, the court is of the opinion that plaintiffs have failed to overcome the presumption of correctness attaching to the collector's classification of the photomultiplier tubes in issue. Insofar as the protests herein relate to such merchandise, the claim for an alternative classification and duty assessment is overruled and judgment will be entered accordingly.