J. J. BOLL, ET AL. v. UNITED STATES (No. 5281)*

United States Court of Customs and Patent Appeals, May 16, 1968

Sharretts, Paley, Carter & Blauvelt (Eugene F. Blauvelt, M. Barry Levy, of counsel) for appellants.

Edwin L. Weisl, Jr., Assistant Attorney General, Andrew P. Vance, Chief, Customs Section, Sheila N. Ziff for the United States.

[Oral argument January 2, 1968 by Mr. Blauvelt and Mrs. Ziff]

Before WORLEY, Chief Judge, RICH, SMITH, and ALMOND, Associate Judges

WORLEY, Chief Judge, delivered the opinion of the court:

This appeal by the importer involves photomultiplier tubes imported from England from 1958 to 1961. The Customs Court [1] sustained the collector's classification as parts of laboratory instruments within the provisions of paragraph 360 of the Tariff Act of 1930.[2] Appellants contend their proper classification is as articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy within the purview of paragraph 353 of said act.[3]

Appellants submitted testimony of four witnesses, and both parties stipulated that "all the photomultipliers before the court produce, amplify, and modify electrical energy and perform no other function whatsoever." Notwithstanding that stipulation, which paraphrases the language of paragraph 353, the Customs Court agreed with appellee that the importations are more specifically provided for in paragraph 360 as parts of laboratory instruments. The court held that appellants' proofs failed to overcome the presumption of correctness of the collector's classification.

Appellants' evidence establishes that the photomultiplier tubes are vacuum tubes that convert the energy of electromagnetic waves, either

---

*C.A.D. 987.

[1] J. J. Boll et al. v. United States, 57 Cust. Ct. 256, C.D. 2777.

[2] As modified by the Sixth Protocol to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

[3] As modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

visible or invisible, into electric charges and amplify the charges; that they perform no function independently, but must be used in conjunction with other apparatus; and that they are incorporated into such other apparatus by being plugged into a socket in said apparatus. The evidence also demonstrates that the tubes are not limited to use in any particular device, but are used in a wide variety of devices and instruments.[4]

The Customs Court, in finding appellants' evidence inadequate to overcome the prima facie presumption of correctness, stated:

\* \* \* the experience of two of plaintiff's witnesses did not relate back to the time of the early importations of the photomultiplier tubes at bar. The entry papers before the court disclose that the importations covered a period from March 11, 1958, to March 24, 1961. Two of plaintiffs' witnesses had no familiarity with photomultiplier tubes or their uses prior to 1960. Moreover, the testimony is in vague and general terms rather than in language clear and specific as to the nature and function of the uses to which the photomultiplier tubes were put in order to negate the presumption of the collector's classification that, in their use, said tubes were used for laboratory purposes of experiment and study. \* \* \*

After acknowledging that the testimony did show a diversity of uses for the tubes, the court further commented:[5]

The fact that the testimony here presented indicates that photomultiplier tubes are not limited exclusively to use in any particular class or kind of device does not obviate the fact that said tubes may, in their diverse uses, be used for laboratory purposes and consequently be subject to classification as laboratory apparatus or parts thereof. The classification of the collector of customs carries with it this presumption, which it is the duty of the party contesting it to overcome. The fact that the instant tubes may be used as parts of a variety of apparatus, instruments, and devices does not *ipso facto* preclude the fact that said apparatus, instruments, or parts thereof may be laboratory instruments or parts thereof, as determined by the collector of customs if said articles are used for laboratory purposes of experiment or study regardless of the situs of such use.

The applicable law is evident from decisions cited in the record. Thus, the term "laboratory instruments" implies instruments used for

---

[4] The tubes are shown to have been used in liquid scintillation systems, spectrophotometers, flying spot scanners, smoke detectors, astronomical light detectors, photometers, seed sorters, oil well exploration or logging equipment, monitors of waste products which may be injurious to health, hospital analyzers for tracer materials, hospital apparatus for measurement of blood volume, qualitative analyzers in steel mills, nuclear radiation detectors, health physics instruments, absorption measuring instruments, gamma ray scintillation systems, hand and clothing monitors, cosmic ray research equipment, industrial colorimeters, oil cleanliness detectors, detectors of chips and cracks in baby food jars and other glassware, television film scanners, textile quality control devices, flight simulators for military aircraft training, low beta and low gamma measuring instruments, toxic gas measuring and detecting devices, and instruments for quality measurement of fruit.

[5] It will be observed that the Customs Court refers to classification as *"laboratory apparatus* or parts thereof." (Emphasis supplied.) It is apparent that arises from the fact that the court held certain other entries of photomultiplied tubes to have been properly classified as *laboratory instruments* in the same opinion which held the present entries to be *parts* of such instruments. Subsequently, the court granted rehearing as to those other entries and the appeal to this court has been dismissed as to them.

laboratory purposes.[6] *R. J. Saunders & Co., Inc.* v. *United States*, 45 CCPA 87, C.A.D. 678. The test for provisions for "parts" is whether the imported article is dedicated to use as a part of the specified article. *United States* v. *Ford Motor Co.*, 51 CCPA 22, C.A.D. 831. There certain parts employed in internal combustion engines were held classifiable as parts of internal combustion engines, rather than as parts of automobiles, because the engines in which the parts were used were not dedicated to use in automobiles. In *Gallagher & Ascher Co.* v. *United States*, 52 CCPA 11, C.A.D. 849, certain auxiliary automobile heaters were held to be parts of automobiles upon a showing that they were dedicated solely to use in automobiles and served no other purpose than as parts of automobiles.

From the above it is apparent that the test of whether the present tubes are "parts" is one of dedication rather than chief use, as in *Ford Motor*. Applying that test to the evidence, we conclude that appellants have made a prima facie case, unrebutted by appellee, that the tubes are not dedicated to use as parts only of laboratory apparatus.

It is true that the evidence does not demonstrate that every one of the diversified devices in which the tubes are used are employed as other than laboratory instruments. It may also be that the evidence does not make such a complete showing of what devices use the tubes that it can be determined whether the tubes are chiefly used in devices which are laboratory instruments. However, the evidence is clear that a substantial number of uses of the tubes, in fact most of the uses attributed to them by the witnesses for appellants, are not as parts of laboratory instruments. Among such uses are in oil well logging equipment where the tube is located in the well hole, in seed sorters which react in response to the color of seeds or coffee beans to separate the good from the bad in what is described as "a very large industrial use which is worldwide for photomultiplier tubes," and in nuclear radiation measurements to afford health protection to employees. Still another described use which must, on the present record, be regarded as not involving laboratory apparatus is the use of the tubes on an assembly line as part of an apparatus which detects chips and cracks in the lips of baby food jars and other types of glassware. A described use of one of the tubes as part of a detector for determining the constitution of toxic gas to which workers are subjected likewise appears from the record to be a use other than as part of laboratory apparatus.

It is also true that, as noted by the Customs Court, the experience of two of appellants' four witnesses did not relate back to the time of the

---

[6] Although our attention has not been directed to any decision of this court on the point, the Customs Court has indicated that "laboratory purposes" refers to use for experiment or study. *The A. W. Fenton Co., Inc.* v. *United States*, 49 Cust. Ct. 242, Abstract 67085.

earlier importations covered by this appeal. However, much of the testimony on the uses referred to above was by the other two witnesses. whose experience with the tubes extended over the full period of the importations. Even the first-mentioned witnesses were active in the applicable field during the time of the later importations and there is nothing in the record to suggest a significant change in uses of the tubes during the involved period. Except for the noted limitation on the two witnesses, all four appear fully qualified in the field.

Appellee points out that some of the tubes, which are identified by type number in a list constituting Exhibit 1 of record, are not referred to in the testimony by number. It also urges that, with regard to the other tubes, the testimony is vague as to the dates of alleged use, the situs of the use and the chief use of the equipment of which they form parts.

However, the testimony is that all the photomultiplier tubes perform the same function. There is further testimony of one witness, uncontroverted in the record, that:

\* \* \* most photomultiplier tubes could be used interchangeably in most instances and generally a specific tube is used because it will be perhaps more efficient.

As to the dates of use, the testimony of the witnesses appears to cover the entire period of their familiarity with the tubes, including the full period of the importations in the case of two witnesses and a significant portion of that period in the case of the others. Appellee has advanced no evidence to indicate that there were any significant changes in the uses of the tubes during any period extending from the time of importation through the taking of testimony.

Appellee's argument with respect to chief use seems to imply that it is necessary for appellants to negate any possibility that most of the diverse devices in which the photomultiplier tubes are employed are used as laboratory instruments. We regard any such contention as obviously contrary to *Ford Motor.*

Absent any contradictory testimony on behalf of appellee, we conclude that the Customs Court erred in holding that appellants have failed to discharge their burden of proving the tubes are not classifiable under paragraph 360 as parts of laboratory instruments. Since the parties have stipulated facts qualifying the tubes for classification of articles for producing, modifying, controlling or distributing electrical energy under paragraph 353, the protest should have been sustained.

The judgment is *reversed.*